AIN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN SECTION OF ARKANSAS

| | |
|---|---|
| THOMAS RILES, | ) |
| | ) Case No. 3:23-cv-03044 |
| PLAINTIFF, | ) |
| | ) |
| | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| | ) **THE AMERICANS WITH** |
| v. | ) **DISABILITIES ACT AND SECTION 504** |
| | ) **OF THE REHABILITATION ACT** |
| | ) |
| | ) |
| CARROLL COUNTY, ARKANSAS, an | ) |
| Arkansas Municipality; SHERIFF DANIEL | ) **JURY TRIAL DEMANDED** |
| KLATT; DEPUTY ANDREW SCOTTI; | ) **PURSUANT TO FED. R. CIV. PRO.** |
| OFFICER LARALYN KOSTER; | ) **38(a) & (b)** |
| | ) |
| | ) |
| DEFENDANTS | ) |
| | ) |
| | ) |

## COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Thomas Riles, by and through his designated attorneys, for his Complaint alleges as follows:

### I. NATURE OF THE ACTION

This suit is brought under the Americans With Disabilities Act and Section 504 of the Rehabilitation Act, as well as the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 1988 to remedy Defendants' actions is causing Plaintiff to be deprived of his constitutional rights by subjecting him to unlawful treatment during his incarceration at Carroll County Jail (hereinafter the "Jail").

Defendants acted with deliberate indifference when they deprived Plaintiff of basic, necessary, and immediate medical care. Additionally, Defendant's discriminated against Plaintiff on the basis of his disability when they denied him a reasonable accommodation – namely, access to his medical supplies.

## II. SUBJECT MATTER AND JURISDICTION

1. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under the Americans With Disabilities Act, the Rehabilitation Act, and § 1983 and § 1988.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.  THE PARTIES AND PERSONAL JURISDICTION

3. Plaintiff Thomas Riles ("Plaintiff") is a 38-year-old man and a resident of Alabama At all times relevant to this action, Plaintiff was a person with a disability and therefore subject to the protections of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

4. Defendant Carroll County is an Arkansas municipality liable for its policies, customs, and practices.

5. Defendant Anthony Scotti is a Deputy with the Carroll County Sheriff's Office.

6. Defendant Laralyn Koster is an officer with the Carroll County Sheriff's Office.

## IV.  FACTUAL ALLEGATIONS

7. Plaintiff Thomas Riles is a 38-year-old man who lives with a serious bowel condition. Because of that condition, Plaintiff had a surgical operation to give him an "ileal pouch," which allows Plaintiff to empty his bowels safely.

8. An ileal pouch is an alternative to a colostomy bag. Instead of the bowels emptying

into a bag worn outside the body, the feces is emptied into looped portions of the intestine. The pouch must then be regularly drained through a valve, via a catheter. Both the valve and the pouch are created out of living flesh – a patient must have sufficient, healthy intestine to create the pouch.

9. Plaintiff must be able to drain his pouch about every four hours. If he waits too long to drain the pouch, the buildup of waste inside the pouch makes it impossible to insert his catheter. If too much pressure builds, the pouch will rupture. A rupture can be deadly.

10. Prior to the events that gave rise to this case, Plaintiff's job required him to travel frequently. He would often spend long days on the road, during which he would need to make regular stops to empty his pouch to prevent buildup.

11. On April 5, 2021, Plaintiff was driving home from a three-day work event. He left the event around 11:30am, and drove through Arkansas. Much of his drive through Arkansas was a curvy, mountain road with no service and few stops.

12. Around 2pm, Plaintiff knew he needed to empty his pouch soon. The only nearby bathroom was a service station, approximately 30 minutes ahead of him.

13. Anxious to get to the bathroom, Plaintiff was driving at a speed of 105 miles per hour when he was pulled over by Deputy Anthony Scotti at approximately 2:45p.m.

14. Plaintiff informed Deputy Scotti immediately that he had an urgent medical need and that he needed access to a bathroom immediately.

15. Deputy Scotti ran Mr. Riles through dispatch and found a non-extraditable warrant from Hocking County, Ohio. He told Plaintiff, "You're going to jail for this one," and subsequently put Plaintiff under arrest.

16. Plaintiff told Deputy Scotti that he needed to stay hydrated in order to catheterize, and that he needed his medical supplies from the passenger side door.

17. Deputy Scotti went and retrieved some, but not all, of Plaintiff's required medical supplies. He did not check with Plaintiff to make certain he had acquired everything Plaintiff needed, even though Plaintiff had repeatedly informed him that he had a serious, pressing medical need.

18. Plaintiff was then taken to the Jail. When he arrived at pre-booking, he told the officers present that he needed access to his medical supplies immediately.

19. The jail nurse examined him in pre-booking, and told the officers present, "We can't take care of him here. You need to get him to a hospital."

20. Instead of heeding the medical advice of the nurse, the officers instead placed Plaintiff in a washdown room and left him there for more than an hour, without giving Plaintiff access to his medical equipment.

21. Officers then moved Plaintiff to another room, at which time Plaintiff began beating on the door and pleading that they give him access to his catheter.

22. Several hours after his arrest, the officers gave Plaintiff what Defendant Scotti had retrieved from the vehicle, which was not sufficient to meet his medical needs. When Plaintiff informed officers that he was missing vital equipment, they told him to "just use what you have."

23. Plaintiff attempted to do so, but the pressure had built up too much to properly drain his pouch without access to all of his supplies. He began bleeding.

24. Officers then took Plaintiff's supplies away and left him alone, bleeding and in increasing pain, from the buildup in his pouch. Plaintiff was kept incarcerated through both dinner and evening medical rounds.

25. Finally, at 8:20pm, more than five hours after his arrest, Plaintiff was released. On information and belief, Defendant Caroll County's employees realized that keeping Plaintiff

incarcerated would subject them to responsibility for his serous medical needs. Instead of taking steps to provide Plaintiff with necessary medical care, said jail staff expedited his release to avoid such responsibility. Also on information and belief, Caroll County has an informal policy or custom of releasing detainees with serious medical conditions to avoid the expense associated with their medical care.

26. Despite having been repeatedly told of Plaintiff's urgent medical condition, deputies did not call an ambulance or offer to transport Plaintiff to a hospital.

27. Plaintiff's fiancé picked him up and rushed him to the nearest hospital. The pressure had built up so much that doctors were forced to do an emergency procedure in order to insert a catheter to relieve the pressure and prevent the pouch from rupturing.

28. The damage was already done. The valve, created out of Plaintiff's intestine, needs surgery to repair. That surgery is extremely high risk for any person, but especially for Plaintiff because of how frequently he has undergone general anesthesia.

29. Because of how high-risk the surgery is, Plaintiff's doctor advised him to wait as long as possible in hopes that the valve would repair itself. Now, instead of merely draining his pouch every few hours, Plaintiff lives with a catheter inserted all the time.

30. Eventually, the damage to Plaintiff's valve began to cause blood infections. For two years, he has attempted to undergo a surgery to repair the pouch, but the limited number of surgeons in the United States able to perform such a surgery have all considered him too high risk to undergo such a surgery.

31. At this point, Plaintiff has been told by his physicians that he has no more than twelve (12) to eighteen (18) months to live as a direct result of the injury caused by Defendants.

## V. CAUSES OF ACTION

### COUNT 1 – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT
### (AGAINST ALL DEFENDANTS)

32. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

33. "In the ADA, Congress provided [a] broad mandate" to "effectuate its sweeping purpose[ to] ... forbid[] discrimination against disabled individuals in major areas of public life, [including] ... public services ...." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001).  It is "'a milestone on the path to a more decent, tolerant, progressive society.'" *Id.* (quoting *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 375 (2001) (Kennedy, J., concurring)).

34. The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

35. The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

36. The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and/or (b) perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 28 C.F.R. §§ 35.130 (b)(3)(i) & (iii).

37. Plaintiff, as a result of his ileal pouch, is an otherwise qualified individual with a medical condition that substantially limits one or more major life activity, and therefore, is considered to be a person with a disability under Section 504 of the Rehabilitation Act, as amended, and under the ADA. *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

38. Defendant Caroll County, on information and belief, has failed to implement policies, procedures and training to ensure that its officers and jail comply with its obligations under the ADA and Section 504.

39. Carroll County Sheriff's Office is a public entity within the meaning of the Americans with Disabilities Act ("ADA") receiving federal funds and is therefore subject to the ADA and Section 504 of the Rehabilitation Act ("Section 504").

40. Plaintiff was subjected to discrimination on the basis of his disability when he was not provided reasonable accommodations for his ileal pouch diagnosis including, but not limited to, access to necessary medical supplies and transportation to a medical facility equipped to handle his condition.

41. Defendants, by denying Plaintiff access to his medical supplies and by ignoring the advice of a qualified medical professional, subjected Plaintiff to discrimination on the basis of disability in violation of 34 C.F.R. § 104.4(b)(4).

### COUNT 2 – VIOLATIONS OF 42 U.S.C. § 1983
### (AGAINST CARROLL COUNTY)

42. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

43. Defendant Carroll County, acting by and through its policymakers, officers, and agents with deliberate indifference, failed to properly hire or train its agents and employees with

respect to their responsibilities in ensuring that they provide care for serious medical needs of detainees, which proximately caused the above-described constitutional rights violations.

44. The County's failure to properly train its agents and employees resulted in a deprivation to Plaintiff's rights secured by the Fourteenth Amendment.

### COUNT 3 – VIOLATIONS OF 42 U.S.C. § 1983
### (AGAINST INDIVIDUAL DEFENDANTS)

45. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

46. Individual Defendants acted with deliberate indifference when they failed to retrieve medical supplies that Plaintiff told them were necessary to his medical condition after his arrest; ignored the serious nature of Plaintiff's condition; ignored the advice of a qualified medical professional; denied Plaintiff access to his medical supplies for hours; and failed to transport Plaintiff to a hospital for life-saving treatment.

47. Defendants, acting with deliberate indifference, directly participated in and proximately caused the violation of Plaintiff's constitutional rights under the Fourteenth Amendment by deliberately ignoring Plaintiff's serious medical needs.

48. A layperson would be aware that Plaintiff required emergency medical care.

49. Defendants had the benefit of professional medical advice from a nurse, who told them that Plaintiff needed to be taken to a hospital. Additionally, Plaintiff repeatedly informed Defendants that he needed access to all of his medical supplies, or else needed to be taken to a hospital for emergency treatment.

50. Individual Defendants were subjectively aware of a serious risk to Plaintiff and disregarded that risk by failing to take reasonable steps to abate it. Defendants, acting recklessly and with deliberate indifference, chose to ignore Plaintiff's serious medical needs and did not

provide him with the medical care that they were aware he required.

51. Defendants' failure to provide necessary medical care resulted in a significant loss in Plaintiff's quality of life, and drastically shortened his expected life span.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each Count of the Complaint and pray for the following relief:

1. Permit Plaintiff leave to amend this Complaint after reasonable discovery;

2. Empanel a jury to try this matter;

3. Award Plaintiff compensatory damages in an amount to be determined by a jury;

4. Award Plaintiff punitive damages against individual Defendants;

5. Award Plaintiff his reasonable attorney's fees, pursuant to 42 U.S.C. § 1988 or 42 U.S.C. § 12205;

6. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure; and

7. Grant the Plaintiff such further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Brice M. Timmons*
Brice M. Timmons (#29582)
Craig A. Edgington (#38205)
Donati Law, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
brice@donatilaw.com
craig@donatilaw.com
***Counsel for Plaintiff***