**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**THOMAS RILES** **PLAINTIFF**

**V.** **CASE NO. 3:23-CV-03044**

**OFFICER LARALYN KOSTER** **DEFENDANT**

# MEMORANDUM OPINION AND ORDER

Now before the Court are Defendant Laralyn Koster's Motion to Exclude Expert Testimony of Mark McKinnon (Doc. 50) and her Motion to Exclude Expert Testimony of Dr. Ernest Rehnke (Doc. 52), as well as Plaintiff Thomas Riles's Motion in Limine to Limit Testimony of Dr. Jason Mizell (Doc. 79).[1] For the reasons stated below, the Court **GRANTS IN PART, DENIES IN PART**, and **DEFERS IN PART** Defendant's Motion to Exclude Expert Testimony of Mark McKinnon (Doc. 50); **DENIES** Defendant's Motion to Exclude Expert Testimony of Dr. Ernest Rehnke (Doc. 52); and **DENIES** Plaintiff's Motion in Limine to Limit Testimony of Dr. Jason Mizell. (Doc. 79).

## I. BACKGROUND[2]

On April 5, 2021, Mr. Riles was arrested for speeding and other traffic offenses. He was detained for several hours at the Carroll County Detention Center. Mr. Riles has

[1] Pursuant to the Protective Order in this case, where a filing contained confidential information, redacted copies were filed to the public docket and unredacted copies were filed under seal. The Court considered the materials found at Docs. 36, 47, 50, 51, 52, 53, 62, 63, 69, 79, and 85 when ruling on the parties' Motions.

[2] For a more fulsome discussion of the facts, *see* the Court's Memorandum Opinion and Order on Defendants' Motion for Summary Judgment (Doc. 83).

an uncommon ileostomy, known as a Barnett Continent Intestinal Reservoir ("BCIR"), which requires specialized medical equipment to empty feces from the surgically created pouch inside his abdomen. The officers involved in his arrest and detention did not make that equipment available to him while he was in custody. He was unable to empty the feces from his internal ileostomy pouch for the duration of his approximately seven-hour detention. *See* Doc. 47-1, pp. 9, 51.

The parties dispute whether the delay in being able to empty his pouch damaged the pouch such that Mr. Riles could no longer drain feces at will and must instead be permanently catheterized. Permanent catheterization comes with the risk of stool leaking from the catheter. Before his arrest, Mr. Riles worked a sales job in the food and beverage industry. After his arrest, he lost business when he could no longer enter sterile food production facilities because of that risk. *See* Doc. 47-5, pp. 72:12–80:13.

## II. LEGAL STANDARD

Expert evidence is relevant and may be admitted if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Ladue*, 561 F.3d 855, 857 (8th Cir. 2009) (quoting Fed. R. Evid. 401). Courts may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The decision whether to exclude expert testimony is committed to a district court's discretion, subject to the Federal Rules of Evidence, including Rule 702. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014). Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Eighth Circuit applies these elements through a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson*, 754 F.3d at 561.

The proponent of expert testimony bears the burden of showing by a preponderance of the evidence that these requirements are satisfied, but "Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (internal citation and quotation marks omitted). "Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Hose v. Chi. N.W. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (internal quotation marks omitted).

## III. DISCUSSION

### A. Motion to Disqualify Expert Mark McKinnon (Doc. 50)

Ms. Koster moves to exclude the testimony of Mr. Riles's damages expert, Mark McKinnon, arguing that his opinions lack sufficient factual grounding.

At the outset, the Court observes that Ms. Koster has not attacked Mr. McKinnon's background and qualifications. Mr. McKinnon works for McKinnon Economics Consulting and is a member of the American Academy of Economic and Financial Experts. (Doc. 51-2, p. 7:12–18). He has been serving as an expert witness since 2014, testifying in approximately eighty-nine cases. (Doc. 51-2, p. 8:4–11). The Court concludes that Mr. McKinnon is qualified to testify as an economics expert.

Based on earnings information provided by Mr. Riles, Mr. McKinnon calculated wage loss damages (including future wage loss and/or impairment) in the total amount of $6,812,851. (Doc. 51-1, p. 2). This calculation assumes the accuracy of Mr. Riles's (alleged) earnings over a thirteen-month period that occurred after the April 2021 incident at the jail—and prior to an (allegedly) related incident/complication that Mr. Riles suffered in February 2024. In that interim window, Mr. Riles says he was employed by MDC Consulting, LLC, a company he co-founded in 2022. *Id*. at p. 1. Mr. McKinnon does not know, and the record does not otherwise explain what MDC Consulting does. The Court only knows that Mr. Riles describes himself as a senior project manager and salesman. (Doc. 47-5, p. 17:15–21).

To prepare his calculations, Mr. McKinnon reviewed the Complaint, Mr. Riles's 2018–2021 tax returns, and a document prepared by Mr. Riles titled "Thomas Riles Earnings and Equity Report." (Doc. 51-1, p. 5). The Earnings Report includes columns indicating "payroll received," "mileage,"[3] and "sales commission total" for the thirteen months between February 2023 and February 2024, which totals $428,061. (Doc. 51-3).

[3] It is not clear to the Court how or why mileage is included as part of a wage loss analysis. Absent some good reason not presently before the Court, data from the "mileage" column should not be included in Mr. McKinnon's calculations.

Mr. McKinnon divided the total by thirteen and then multiplied by twelve to arrive at annualized income of $395,134. (Doc. 51-2, p. 38:2–15). Mr. McKinnon then accepts as true Mr. Riles's own estimate that he has or will lose 80% of that annual income as a direct result of the February 2024 incident/complication.

Ms. Koster is critical of the facts that Mr. McKinnon used to prepare his expert report. For example, Mr. McKinnon's wage loss opinions are premised on the assumption that Mr. Riles had $395,000 in annualized income in 2023, the only evidence of which is Mr. Riles's own self-serving representation. At the same time, Mr. McKinnon elected to ignore the income Mr. Riles reported on his tax returns for several years prior to his April 2021 arrest and detention—which was relatively minimal. Although Ms. Koster frames her argument as one about the factual basis of Mr. McKinnon's testimony, it is more properly understood as an attack on the assumptions underlying his opinions.

In the Court's view, Mr. McKinnon's expert role is that of a glorified number cruncher— "glorified" in the sense that he must necessarily incorporate his expertise in selecting and applying an appropriate discount rate to present value calculations. Ms. Koster is not critical of the number crunching: she does not challenge the discount rate or the mathematical formula used to calculate present value. Instead, she disputes the factual assumptions used by Mr. McKinnon in his present value tables. To that point, Mr. McKinnon readily concedes that his wage loss opinions are only as accurate as the information he has been asked to assume. (Doc. 51-2, p. 41:1–10). Typically, however, challenges to an economist's assumptions regarding future lost wages go to the weight and not the admissibility of the testimony. *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 211–12. (8th Cir. 1981).

Accordingly, Defendant's Motion to Disqualify Expert Mark McKinnon is **GRANTED** to the extent that Mr. McKinnon may not opine that Mr. Riles's annual income was, in fact, $395,000 in 2023, nor may he opine that Mr. Riles's earning capacity has been impaired by 80%; but the Motion is **DENIED** to the extent that Mr. McKinnon may use factual assumptions (as supported by the evidence at trial) to opine about mathematical calculations and economic considerations, including discount rates, present value calculations, and life expectancy tables. A ruling as to whether any specific factual assumption is supported by sufficient facts or data is **DEFERRED** until trial.

**Motion to Disqualify Expert Dr. Ernest Rehnke (Doc. 52)**

Ms. Koster moves to exclude Mr. Riles's medical expert, Dr. Ernest Rehnke, arguing that his opinions are factually unsupported for two reasons. First, Ms. Koster argues that Dr. Rehnke improperly failed to rule out obvious alternative causes of Mr. Riles's medical complications. Second, Ms. Koster claims that Dr. Rehnke's opinion is based on insufficient data because he did not know the number of times that Mr. Riles typically intubated his BCIR.

Dr. Rehnke is a general and vascular surgeon licensed to practice in Florida who has been retired since 2020. (Doc. 52-1, p. 1). Throughout his career, Dr. Rehnke created and managed continent ileostomies for approximately 3,000 patients. *Id*. Dr. Rehnke treated Mr. Riles between 2010 and 2017, during which Dr. Rehnke created and repaired a BCIR for him. *Id*. Ms. Koster does not challenge Dr. Rehnke's qualifications as an expert. The Court has reviewed Dr. Rehnke's expert report and deposition and concludes that he is qualified to serve as an expert on this matter.

Dr. Rehnke contends that Mr. Riles has a damaged valve that does not function properly due to the delay in care Mr. Riles experienced on April 5, 2021. (Doc. 52-2, pp. 131:25–132:10). Dr. Rehnke's expert report states that because of the delay, Mr. Riles suffers "ongoing significant social, physical, and financial disabilities with the possibility of early death." (Doc. 52-1, p. 8). Dr. Rehnke opines that "it is more likely than not that Mr. Riles' lifespan has been significantly foreshortened as a direct result of being denied the ability to empty his BCIR on April 5, 2021." *Id*.

Ms. Koster's primary argument is that Dr. Rehnke should have conducted a differential diagnosis to determine the cause of Mr. Riles's continuing medical complications. (Doc. 53, p. 5). Ms. Koster argues that Dr. Rehnke did not rule out three other potential causes. These include Mr. Riles's consistent valve problems before April 5, 2021, other issues related to Gardner's Syndrome, and a later incident during which Mr. Riles went nine hours without access to the equipment required to intubate his BCIR. *Id*. pp. 5–7.

Ms. Koster claims that a plaintiff's expert "must 'rule in' the suspected cause of the injury *and* also 'rule out' other possible causes." *Id*. at p. 4. The Court disagrees. Differential diagnosis is a method of determining causation by which an expert "determines all of the possible causes for the patient's symptoms and then eliminates each of these potential causes until reaching one that cannot be ruled out, or deduces which of those that cannot be excluded is the most likely." *Johnson*, 754 F.3d at 564 n.2. The Eighth Circuit has held that using a differential diagnosis, "is presumptively admissible." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (per

curiam). However, an expert does not need to rule out all possible causes of an injury. *See, e.g.*, *Johnson*, 754 F.3d at 563.

The Court will not exclude Dr. Rehnke's opinion on the basis that he did not rule out all possible causes of Mr. Riles's medical complications. Dr. Rehnke's report is based on Mr. Riles's deposition and a review of his medical history, including his records from when he was Dr. Rehnke's patient. A review of Mr. Riles's medical record necessarily includes the many complications he suffered prior April 5, 2021, and his medical history after April 5, 2021. Although Dr. Rehnke does not state explicitly that he ruled out other potential causes, such as Gardner's Syndrome, his report and testimony suggest that he did. For instance, in Dr. Rehnke's deposition, he considered the effects of Gardner's Syndrome on Mr. Riles's health. He testified to the ways in which Gardner's Syndrome can lead to future health problems. (Doc. 52-2, p. 104:8–12). Yet, he ultimately concluded that Gardner's Syndrome was the not the cause of Mr. Riles's current suffering.

The Court concludes that Dr. Rehnke's causation opinion is sufficiently reliable and factually supported. Ms. Koster's issue with Dr. Rehnke's opinion is an attack on the completeness of Dr. Rehnke's methodology. *See Kudabeck v. Kroger Co*., 338 F.3d 856, 861 (8th Cir. 2003). Such an attack goes "to the weight and not the admissibility of his testimony." *Id*.

Ms. Koster also argues that Dr. Rehnke's opinion is unreliable because it is based on insufficient data. She claims that because Dr. Rehnke did not know the number of times that Mr. Riles intubates his BCIR, he could not reasonably conclude that a delay in intubating caused Mr. Riles's current complications. (Doc. 53, p. 8). Although Dr. Rehnke concedes in his deposition that he did not know how frequently Mr. Riles was intubating

in April 2021, Mr. Riles's medical record suggests that he was intubating multiple times a day. (Doc. 47-10, p. 1). Like Ms. Koster's first argument, this claim goes to the completeness of Dr. Rehnke's methodology. It does not provide independent grounds to exclude his testimony.

Accordingly, the Court **DENIES** Defendant's Motion to Exclude Expert Testimony of Dr. Ernest Rehnke.

**B. Motion to Limit Testimony of Dr. Jason Mizell (Doc. 79)**

Plaintiff's Motion in Limine seeks to limit the testimony of Defendant's medical expert, Dr. Jason Mizell. Mr. Riles argues, *inter alia*, that Dr. Mizell's opinions are irrelevant, prejudicial, and unreliable.

Dr. Mizell is a board-certified colorectal surgeon who has been practicing for over twenty years. (Doc. 36-3). He has served as an expert witness in fourteen cases. (Doc. 36-2, p. 1). Mr. Riles does not challenge Dr. Mizell's qualifications. After reviewing his curriculum vitae (Doc. 36-3), the Court concludes Dr. Mizell is qualified to testify as an expert.

Dr. Mizell's report posits that "the delay in Mr. Riles being able to catheterize his BCIR did not lead to clinically significant damage to his BCIR, did not subject him to an increase in procedures or surgeries, or lead to a foreshortened life." (Doc. 79-1, pp. 5–6). Instead, Dr. Mizell opines that Mr. Riles's ongoing medical complications are attributable to his complicated medical history and lifestyle choices. *Id*. at 6.

Mr. Riles seeks to exclude the portions of Dr. Mizell's report that attribute Mr. Riles's ongoing medical problems to his pre-existing conditions and lifestyle choices, claiming these opinions are irrelevant and unfairly prejudicial. (Doc. 79, p. 2). Mr. Riles

argues that Dr. Mizell should have considered the effect of Ms. Koster's conduct on April 5, 2021. *See id.* at 3.

Attacks on the factual basis of Dr. Mizell's conclusion go to the weight, not the admissibility of his testimony. *See Kudabeck*, 338 F.3d at 861. Moreover, Dr. Mizell's opinions are of consequence, and based on the Defense's damages theory, they tend to make it more likely than not that something other than Ms. Koster's conduct caused Mr. Riles's health complications. Accordingly, Dr. Mizell's causation opinions are neither irrelevant nor unfairly prejudicial. The Court will not limit Dr. Mizell's testimony on this basis.

Mr. Riles also seeks to exclude Dr. Mizell's opinions that reference comments by "Plaintiff's counsel," claiming such opinions are irrelevant and unreliable. (Doc. 79, p. 6). Ms. Koster responded that Dr. Mizell is actually referring to statements made by Dr. Rehnke. (Doc. 85, p. 4). Such references to "Plaintiff's counsel" in Dr. Mizell's report are confusing. However, given that the statements in Dr. Mizell's report that mention Mr. Riles's counsel do appear to be referring to statements in Dr. Rehnke's report, the Court refuses to exclude Dr. Mizell's opinions on this basis.[4]

Additionally, Mr. Riles appears concerned that Dr. Mizell will present new or additional opinions beyond those in his report. Mr. Riles argues that Rule 26 of the Federal Rules of Civil Procedure limits Dr. Mizell's testimony to the "four corners of his report." (Doc. 79, p. 7). Because parties have an ongoing duty to supplement their expert

---

[4] That said, Dr. Mizell's trial testimony should avoid confusing references to Mr. Riles's counsel.

witnesses' reports, the Court will not preemptively limit Dr. Mizell's testimony on this basis. *See* Fed. R. Civ. P. 26(e)(1)(A).

Mr. Riles also seeks to prohibit Dr. Mizell from testifying to any opinions that mention Dr. Rehnke, which Mr. Riles seems to label as rebuttal opinions. Mr. Riles argues that Dr. Mizell should be prohibited from providing rebuttal testimony because Ms. Koster was required to disclose any rebuttal opinions that Dr. Mizell will offer and failed to do so. However, Ms. Koster's decision not to identify a rebuttal expert does not mean that Dr. Mizell's testimony should be limited.

Further, Mr. Riles argues that Dr. Mizell should not be allowed to testify about any opinions that mention Dr. Rehnke because Dr. Mizell did not list Dr. Rehnke's report among the documents that he reviewed when preparing his own report. Dr. Mizell's failure to list Dr. Rehnke's report initially confuses the reader because Dr. Mizell's report clearly indicates that he reviewed Dr. Rehnke's opinions. Ms. Koster, in her Response to Plaintiff's Motion in Limine, explains that the failure to list Dr. Rehnke's report was an "oversight." (Doc. 85, p. 6). This oversight is not a reason to exclude Dr. Mizell's report.

Lastly, Mr. Riles claims that portions of Dr. Mizell's testimony that mention Dr. Rehnke are irrelevant. His opinions that mention Dr. Rehnke dispute the appropriate treatment for Mr. Riles and the likelihood that his catheter will continue to intermittently leak. A disagreement between the parties' experts does not render one expert's opinions irrelevant.

Therefore, the Court **DENIES** Plaintiff's Motion in Limine to Limit Testimony of Dr. Jason Mizell (Doc. 79).

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant's Motion to Exclude Expert Testimony of Mark McKinnon (Doc. 50) is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**; Defendant's Motion to Exclude Expert Testimony of Dr. Ernest Rehnke (Doc. 52) is **DENIED**; and Plaintiff's Motion in Limine to Limit Testimony of Dr. Jason Mizell (Doc. 79) is **DENIED**.

**IT IS SO ORDERED** on this 23rd day of September, 2026.



____________________________________
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE